# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MACHELLE HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-803-SLP |
| | ) |
| USAA SAVINGS BANK, | ) |
| | ) |
| Defendant. | ) |

# **O R D E R**

Before the Court is Defendant USAA Savings Bank's Motion to Dismiss [Doc. No. 11]. Plaintiff has responded [Doc. No. 12] and Defendant has replied [Doc. No. 13].[1] Both parties have also filed Notices of Supplemental Authority [Doc. Nos. 18-23]. For the reasons set forth, Defendant's Motion is denied.

**I.**     **Introduction**

Plaintiff brings this action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (TCPA). Plaintiff's claims are premised on certain calls Defendant placed to Plaintiff's cell phone for debt collection purposes. Defendant moves for dismissal of the action on the basis that Plaintiff has failed to allege Defendant placed the calls with an automated telephone dialing system as required to state a violation of the TCPA.

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

## II. Factual Background

The following factual allegations of the First Amended Complaint [Doc. No. 9] are taken as true for purposes of analysis under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant placed collections calls to Plaintiff on her cell phone to collect on alleged debts incurred through purchases made on credit issued by Defendant. First Am. Compl., ¶¶ 8-10. Per its prior business practices, Defendant's calls were placed with an automatic telephone dialing system. *Id.*, ¶ 11. Defendant placed the calls with equipment that has the capacity to store or produce phone numbers using a random or sequential number generator and has the ability to call those numbers. *Id.*, ¶ 12. Sophisticated debt collectors, like Defendant, require "sophisticated phone systems that are capable of storing large amounts of phone numbers and data regarding each phone number, assuring that their employee debt collection agents are being fully utilized, managing the large numbers of debt collection calls made during each day, and keeping track of each call as well as the performance and outcome of each call for future collection purposes." *Id.*, ¶ 13.

On or about December 19, 2017, Plaintiff spoke with a representative of Defendant, provided the representative her social security number, and requested that Defendant stop calling her cell phone, thus revoking any consent to placement of the calls. *Id.*, ¶¶ 17-19. Nonetheless, on December 20, 2017, Defendant placed two more collection calls to Plaintiff. *Id.*, ¶ 20. Defendant then continued to place collection calls via auto dialer to Plaintiff's cell phone up to seven times a day, and up to six days a week through April 2018. *Id.*, ¶ 21. The calls were placed at various times of the day. *Id.*, ¶ 22. Plaintiff did

not pick up Defendant's calls to her cell phone and Defendant did not leave any voicemails. Plaintiff observed that the calls would "systematically terminate" once they would be directed to voicemail. *Id*., ¶¶ 23-24. Defendant placed at least 119 automated calls to Plaintiff's cell phone. *Id*., ¶ 25.

### III. <u>Governing Standard</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that they defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To evaluate the sufficiency of the allegations of the complaint under the "*Twombly/Iqbal* pleading standard" the court undertakes a "two-prong approach." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (citation omitted). Under the first prong, the court determines which allegations are not entitled to the assumption of truth and includes "legal conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. (citation omitted). The second prong requires the court to assume the truth of the well-pleaded factual allegations and determine whether they state a plausible claim for relief. *Id*. (citation omitted).

## IV. Discussion

The TCPA prohibits "any person within the United States" from "mak[ing] any call (other than a call for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). The statute defines "automatic telephone dialing system" (ATDS) as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." *Id.*, § 227(a)(1).

To state a claim under the TCPA, Plaintiff must allege that: (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express consent of the recipient. *See, e.g., Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013) (citing 47 U.S.C. § 227(b)(1)(A)(iii); *see also Rallo v. Palmer Admin. Servs., Inc.*, No. 18-cv-01510-RM-MEH, 2019 WL 1468411 at *2 (D. Colo. April 3, 2019) (unpublished op.).

The parties' dispute centers upon whether Plaintiff has alleged facts sufficient to demonstrate Defendant used an ATDS.[2] Defendant contends that under *Iqbal*, Plaintiff's allegation that Defendant used an ATDS must be disregarded as "a legal conclusion

---

[2] *See* Pl.'s Resp. at 4 (acknowledging that "Plaintiff did not plead or suggest that Defendant used a prerecorded or artificial voice when it called her. Rather, Plaintiff's [First Amended Complaint] decisively states that she spoke with one of Defendant's representatives and that Defendant used an ATDS in connection with its communications towards Plaintiff." (citing First Am. Compl., ¶¶ 11, 17).

4

couched as a factual allegation" and, therefore, insufficient to withstand a motion to dismiss." Def.'s Mot. at 9-10 (citations omitted). Moreover, Defendant contends Plaintiff's allegations demonstrate "***direct targeting***," i.e., that Defendant "specifically called ***her***, at her ***specific 25XX Number***, regarding ***her specific debt with [Defendant]***" and, therefore, demonstrate the numbers were not generated in a random or sequential fashion. *Id*. at 10-11. According to Defendant "[a]n ATDS, by definition under the TCPA, must have the capacity to store or produce telephone numbers for dialing using a random or sequential number generator" and that "purposeful dialing of specific telephone numbers does not create an inference that [Defendant] used an ATDS." *Id*. at 2.

In response, Plaintiff argues that she specifically alleged not only that Defendant used at ATDS, but also that Defendant called her cell phone "with equipment that has the capacity to store or produce phone numbers using a random or sequential generator and has the ability to call those numbers." Pl.'s Resp. at 5 (citing First Am. Compl., ¶¶ 11, 12). Plaintiff also points to the following allegations as plausibly demonstrating an ATDS was being utilized: the frequency of the calls, the unpredictability of the calls and the fact the calls would disconnect when being directed to voicemail without Defendant leaving any voicemail. *Id*. (citing First Am. Compl.,¶¶ 21-22).

In reply, Defendant argues the allegation regarding voicemails is irrelevant "as it suggests nothing regarding Plaintiff being randomly called" and that the allegations of "frequency and unpredictability" are also generic and irrelevant. Def.'s Reply at 9.

5

Courts addressing the issue of the sufficiency of the allegations of a complaint concerning use of an ATDS have reached diverging results. No Tenth Circuit authority exists.

The issue arises from the statutory definition of an ATDS which has been the subject of "extensive rulemaking and debate." *Wilson v. Quest Diagnostics, Inc.*, No. Civ. 2:18-11960, 2018 WL 6600096 at *2 (D. N.J. Dec. 17, 2018) (unpublished op.). In 2003, 2008, 2012 and 2015, the Federal Communications Commission ("FCC") issued interpretations of what constitutes an ATDS.

In 2003, the FCC ruled that a "predictive dialer" constitutes an ATDS. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091, 14093 (2003).[3] In reaching this conclusion, the FCC rejected the argument that predictive dialers do not fall within the statutory definition of an ATDS because they do not dial numbers randomly or sequentially, but rather "store pre-programmed numbers or receive numbers from a computer database and then dial those numbers in a manner that maximizes efficiencies for call centers." *Id*. at 14090. The FCC found "[it is] the capacity to dial numbers without human intervention" that qualifies a device as an ATDS. *Id*. at 14092.

The FCC reaffirmed that ruling in 2008. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008). The FCC once again

---

[3] A predicative dialer is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *Id*.

rejected the argument that "a predictive dialer meets the definition of an autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *Id*. And in 2012, the FCC again stressed that the TCPA's definition of an ATDS "covers any equipment that has the specific capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15392 n.5 (2012).

In 2015, the FCC again concluded that predictive dialers satisfy the TCPA's definition of an ATDS. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7972 (2015). The FCC "reaffirm[ed] [its] previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') . . ., including when the caller is calling a set list of consumers." *Id*. at 7971–72. But the agency also expanded the concept of capacity, finding that "the capacity of an [ATDS] is not limited to its current configuration but also includes its potential functionalities" with modifications such as software changes. *Id*. at 7974.

The D.C. Circuit Court of Appeals subsequently reviewed the 2015 Order and "set aside the [FCC's] explanation of which devices qualify as an ATDS" noting the "unreasonableness of the [FCC's] expansive understanding of when a device has the 'capacity' to perform the necessary functions." *ACA Int'l v. FCC*, 885 F.3d 687, 695, 703

7

(D.C. Cir. 2018).  The D.C. Circuit did not, however, specify that a particular ATDS definition was wrong or what types of devices would qualify as an ATDS.  *Id*. at 702-703.[4]

Defendant argues that the *ACA International* decision set aside all prior rulings of the FCC as to what constitutes an ATDS.  *See* Def.'s Resp. at 6.  Accordingly, Defendant argues no FCC guidance exists and "the definition of an ATDS is limited to its statutory definition."  *Id*. at 7.  But not all courts are in accord with Defendant's position.  *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 369 F. Supp.3d 476, 488-89 (E.D. N.Y. 2019) (noting that "many courts have upheld the validity of the prior FCC Orders" and concluding that "the invalidation of the 2015 Order does not implicitly invalidate the prior FCC Orders"); *Hudson v. Ralph Lauren Corp.*, No. 18-C-4620, 2019 WL 1953106 at *3 (N.D. Ill., May 1, 2019) (unpublished op.) ("After *ACA International*, courts have split on the proper definition for an ATDS and whether *ACA International* invalidated the FCC's prior 2003 and 2008 interpretations of an ATDS or left those definitions intact." (citing cases)); *see also Ammons v. Ally Fin., Inc.*, 326 F. Supp.3d 578, 587 (M.D. Tenn. 2018) (joining "growing number of other courts that continue to rely on the interpretation of § 227(a)(1) set forth in prior FCC rulings" (citing cases)); *but see Thompson-Harbach v. USAA Federal*

---

[4] The D.C. Circuit stated:

> [D]oes a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

*Id*., 885 F.3d at 702-03.

*Savings Bank*, 359 F. Supp.3d 606, 621 (N.D. Iowa 2019) (siding with courts "finding that the *ACA International* holding necessarily invalidated the FCC's [2003 and 2008 rulings] . . . defin[ing] a predictive dialer as an ATDS, even when the predictive dialer lacks the capacity to generate phone numbers randomly or sequentially and to then dial them").

Even assuming the statutory definition governs the analysis after *ACA International*, the Court finds Plaintiff has alleged facts sufficient to plausibly show Defendant placed calls to Plaintiff using an ATDS. The Court recognizes, as many courts have, "the difficulty of alleging details about an ATDS before discovery." *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 WL 719762 at *3 (D. N.M. Feb. 20, 2019) (unpublished op.); *see also Shelton v. Nat'l Gas & Elec., LLC*, No. CV-17-4063, 2019 WL 1506378 at *11 (E.D. Pa. April 5, 2019) (unpublished op.) (addressing sufficiency of ATDS allegations and stating "we cannot require a plaintiff to make allegations regarding the technical aspects of a device, including the precise level of human intervention needed to make a call, when he or she has no way of knowing those details prior to discovery"); *Hewitt v. Synchrony Bank*, No. 17-00874-CV-W-ODS, 2017 WL 6349051 at *3 (W.D. Mo. Dec. 12, 2017) (unpublished op.) (finding persuasive the "authority regarding the unreasonableness of requiring Plaintiff to plead specific details about the use of an ATDS prior to the benefit of discovery") (citing cases).[5]

---

[5] In this regard, the Court notes Defendant largely cites case law resolving whether an ATDS has been utilized at the summary judgment stage. *See, e.g., Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (affirming grant of summary judgment in favor of defendants on grounds the plaintiff could not point to any evidence suggesting the device at issue "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing

And, the Court acknowledges that a bare allegation that Defendant used an ATDS is not enough. But here, Plaintiff makes additional allegations from which the Court can reasonably infer that the calls were made using an ATDS. *Cf. Asher v. Quicken Loans, Inc.*, No. 17-cv-1203, 2019 WL 131854 at *3 (D. Utah Jan. 8, 2019) (unpublished op.) (finding calls "bore indicia of an automated dialer" when the plaintiff alleged that he experienced "a delay before [he] [wa]s able to speak to anyone"); *Hewitt*, 2017 WL 6349051 at *3 (recognizing the allegations of the complaint regarding use of an ATDS were "thin" but finding allegations sufficient based on number of calls and their timing even though Plaintiff did not detail "whether a pre-recorded message or human voice would respond if he answered and whether any voicemails were left if he did not answer*"); Uekert v. State Farm Bank, F.S.B.*, No. 17-CV-05094, 2017 WL 3981136 at *2 (W.D. Ark. Sept. 11, 2017) (unpublished op.) (finding that TCPA plaintiff sufficiently alleged ATDS even where aside from alleging defendant used an ATDS, he only provided "sparse" factual support in the form of allegations relating to the "frequency, unpredictability, and the nature of [the] calls").

The Court rejects Defendant's argument that *dismissal* is proper because Plaintiff's allegations indicate "direct targeting." After *ACA International*, courts interpreting the TCPA have found that "to qualify as an ATDS, the defendant need not have deployed the device's capacity to generate telephone numbers randomly or sequentially as long as the device has the present ability to do so." *Hudson*, 2019 WL 1953106 at *4 (citing *Pinkus*

---

those numbers"). These cases, therefore, are not particularly helpful to the issue before the Court – the sufficiency of Plaintiff's allegations at the pleading stage.

*v. Sirius XM Radio, Inc.*, 319 F. Supp.3d 927, 939 (N.D. Ill. 2018) ("[T]he best reading of 42 U.S.C. § 227(a)(1) requires that an ATDS have the capacity to generate numbers randomly or sequentially and then to dial them, even if that capacity is not deployed for practical reasons."); *see also King v. Time Warner Cable, Inc.*, 894 F.3d 473, 479 (2d Cir. 2018) (drawing distinction between "a device that currently has features that enables it to perform the functions of an autodialer – whether or not those features are actually in use during the offending call – and a device that can perform those functions only if additional features are added); *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1356 (S.D. Fla. 2018) (finding allegations of complaint sufficient to plead the ATDS element of a TCPA claim where plaintiff alleged defendant made over 310 calls to plaintiff's cell phone and ignored plaintiffs demands to cease calling); *cf. Heard v. Nationstar Mortg. LLC*, No. 2:16-cv-00694-MHH, 2018 WL 4028116 at *6 (N.D. Ala. 2018) (unpublished op.) (a debt collection entity "will always make its collection calls with reference to a relatively narrow, predetermined list of telephone numbers [b]ut this fact does not prevent the TCPA from applying to . . . predictive collection calls").

Plaintiff has alleged the equipment used by Defendant has the capacity to generate and dial random or sequential numbers and additional facts suggesting Defendant was autodialing Plaintiff. Without factual development, resolution of Defendant's direct targeting argument is premature.[6]

---

[6] In making this argument Defendant primarily relies upon *Duguid v. Facebook, Inc.*, No. 15-CV-00985, 2017 WL 635117 at *10 (N.D. Cal. Feb. 6, 2017) (unpublished op.). *See* Def.'s Mot. at 11. In that case, the district court dismissed the complaint finding the plaintiff inadequately alleged that Facebook sent messages using an ATDS. But the Ninth Circuit Court of Appeals recently

11

## V. Conclusion

For the reasons stated, at this juncture Plaintiff's allegations plausibly allege sufficient facts to state a claim for relief under the TCPA. After the parties have engaged in discovery, Defendant can renew its challenge to whether Plaintiff has established use of an ATDS.

IT IS THEREFORE ORDERED that Defendant USAA Savings Bank's Motion to Dismiss [Doc. No. 11] is DENIED.

IT IS SO ORDERED this 15th day of July, 2019.

*[signature]*
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

reversed the district court's dismissal and held that "an ATDS need not be able to use a random or sequential generator to store numbers – it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Duiguid v. Facebook, Inc.*, -- F.3d --, No. 17-15320, 2019 WL 2454853 at *3 (June 13, 2019) (quoting *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018)); *see also Gonzalez v. HOSOPO Corp.*, 371 F. Supp.3d 26, 31 (D. Mass. 2019) ("equipment need not itself be able to generate random or sequential numbers to qualify as an ATDS under the TCPA"); *but see Thompson-Harbach*, 359 F. Supp.3d at 625 ("the phrase 'using a random or sequential number generator' necessarily conveys that an ATDS must have the capacity to generate or store telephone numbers, either randomly or sequentially, and then to dial those numbers").